Jennifer Kuhn on behalf of Christina Manta. Although this extradition proceeding involved a number of errors, I'd like to focus today on the issue of identity. My client, Ms. Manta, was certified for extradition as to two charges. I've called them Charge 2 and Charge 4 in my brief. As to Charge 2, there's no confident evidence of identity whatsoever in the record, and it was clear error for her to be certified for extradition on that charge. As to Charge 4, there is a single photographic identification by a purported eyewitness, but that identification was untimely submitted under the treaty, and it was unreliable and a violation of due process because the circumstances of that identification were clearly so suggestive. Clearly, I didn't hear the last words. Clearly what? So suggestive. Turning first to Charge 2, there is no confident evidence of identity. There's no evidence that Ms. Manta was in Greece during the timeframe of that charge, which was 1988-91. There's no allegation from the purported victim in that case or any witness that the perpetrator used the name of Manta. There's no photograph of the perpetrator. There's no physical description. In fact, there's no identity documents from Greece whatsoever as to the Kierkegaard name. Now, we do have a statement by the Greek prosecutor, which is at the supplemental excerpts 18-19, stating in general that Ms. Manta's passport photograph is a good likeness of the perpetrator of all these offenses. But as the district court found, that statement is completely conclusory and fails to specify any factual support. It doesn't state, for example, that there is any witness identification as to Charge 2. There's – it's not possible to determine from that statement whether there was any witness that identified the perpetrator of Charge 2. So that statement does not – is not confident evidence of identity. Counsel, isn't the credibility of the ID really committed to the magistrate or the district court in this case, and it's not reviewable on habeas? Credibility of witness, that's true. There's case law that says that it's committed to the magistrate. But it's up to this court to review whether there's any competent evidence of identity. And competency requires a showing of sufficient reliability. Under the treaty, Article I – Well, Escobedo, which is the case that I think we're both referring to here, which is one of our 1980 cases, there was a single photographic identification that was used and was found competent. What's the difference? The main difference is Escobedo case did not address a constitutional due process challenge to the suggestiveness of that identification. But here, Counsel, we're talking about the implementation of an international treaty that by its terms is to be interpreted liberally. How – I'm having difficulty connecting what you're arguing and the kind of a document and structure, if you will, that we're dealing with here. We're talking about sending this woman back to Greece to face charges. Isn't that the gravamen of what we're talking about here? That's correct. And it is, as Your Honors are aware, it's a very serious matter to send someone back to a country where – which has, I'm sure, different concepts of criminal justice than we do. And I'll note, first of all, that we've just shifted from talking about Charge 2 to Charge 4. There was no photographic identification at all as to Charge 2. As to Charge 4, you are referring to this witness statement by Ms. Lewis. But as the cases I've cited make clear, the circumstances of that identification are so suggestive that they're violative of due process. It really clearly falls within the Chavez case that I've cited. Let me just be sure I'm understanding it correctly. According to my notes, the court compared the passport picture that Louis – I may be saying it wrong, L-O-U-I – identified to be the person before the court and concluded that they were the same person. The public prosecutor of Greece stated that the person in the passport photo looked like the person Greece sought for extradition. Documents revealed three different dates of birth listed for Christina Monta, and Monta admitted to the FBI that she was in Greece in 1997 when some of the relevant events took place. In the aggregate, doesn't that fairly – certainly given the liberal construction of the treaty, doesn't that adequately identify your client for all charge purposes? No, it doesn't. First of all, an identity of names itself is not sufficient. We have to have some evidence that the person we have before the court here is the person that's wanted in Greece. So as to the two separate charges, 2 and 4, they're completely different time frames, completely different victims and witnesses, you know, a period of 5 to 10 years difference in between them. And this is a case where even the government is alleging use of false identities and false names. We can't infer that just because someone is the person wanted as to charge 4, it's the same person that's wanted as to charge 2. Well, I guess my trouble with your approach on this, Counsel, is that if we were talking about a criminal proceeding in the United States and a trial, your point might be very well taken. But for reasons known only to the State Department and the government of Greece, this treaty was agreed to, and the Senate ratified it. And so there's been a decision that we're going to extradite people who meet certain qualifications liberally construed. She's not convicted. She's just simply being sent, if this is upheld, she's going to be sent back to Greece where she will be processed. Now, their system is not what our system is, but our government, in its wisdom, has decided that it's good enough to enter into this treaty. What am I missing here? There still is a standard of review for this Court, and that is a review of the competency and reliability of the evidence. And even the treaty Article 1 provides that it has to be sufficient evidence of the crime, including identity, that would justify a commitment for trial here. So it really is analogous to a rule, what used to be Rule 40 proceeding here, where we're transferring someone to another district. And as to Charge 2 particularly, the statement by the prosecutor that he's familiar with the investigation and he knows that this is the person that's wanted in Greece, that would not suffice even for a Rule 40 proceeding here. It doesn't even rise to the level of a hearsay. He doesn't even mention a single witness that identifies my client as the perpetrator of Charge 2. So there's no competent evidence at all in the record justifying an identity finding as to Charge 2. Do you agree as to Count 4? No, I don't. And that's because for two reasons, as I've discussed in my brief. The evidence submitted was blatantly untimely under the treaty. The treaty requires that the documentary proof be submitted within two months of the person's arrest. Here, in some cases, it was six months late and then ten months late before that evidence was submitted. And that's a problem because we want the foreign government to have its evidence ready when we arrest the person here for extradition. We don't want it, as happened here, that evidence to be tailored later to the person that happens to be in custody here. And that connects to the second problem with Charge 4, which is the impermissibly suggestive identification. And I see I'm approaching my two minutes, but here we have it. And you'll probably want to reserve your time because I'm sure the government may not agree with you. I'm sure they don't. Thank you. Okay. Let's next hear from, I believe, Mr. Hoffman from an AUSA from San Diego. Good morning. Kyle Hoffman for the United States. I would like to start with a general proposition, which I believe, Judge Smith, you've already hinted at, and that's that the scope of review in this case is very, very limited. We're on a certification of an extradition order by a magistrate, then a habeas petition to the district court, which was denied. Essentially, the magistrate's findings were affirmed. And there's clear case law that the scope of review of a certification of an extradition order is considerably more restricted than that generally engaged in by the appellate court. So we start with that general posture. Now, then we start with the other proposition. The question is, is there any competent evidence? And there are a number of cases that use that precise language, Yin Choi, Quinn, Fenn versus Melendez, any competent evidence to support the finding of probable cause. Now, what counsel has done here this morning is focus on the issue of identification for charges two and charge four. And what I'd like to say first is there really doesn't seem to be much issue about charge four because we have a sworn statement of Louie Dimitri. Dimitri Louie, I'm sorry. We have her identifying the passport photo of Christine Manta and saying, yes, that's the person who defrauded me. And I've come to learn that she also goes by the name of Cristalla Cariocadu. And the court identifying, looking at the passport photo and saying, that looks like the person before me in the court. And the court obviously looking at the Ms. I guess if I understood counsel's, your opposing counsel's argument, she's saying that the what constitutes competent evidence is more like what we would consider competent evidence of the United States as opposed to what a treaty might require. What's the government's response to that? Disagree very much. Now, there are a number of things to say about that. The first is, in the briefs anyway, there was an argument that the evidence had to be under oath. Now, first of all, the treaty doesn't require that, the explicit language of the treaty. So I won't parse that language, but I think it's very clear once you look at Article 11 of the treaty that there is no oath requirement. Second, the cases, and in particular I would direct the court to Zanazanian and Emami, both of which essentially are analogous to the case here. They're summaries, they're not sworn, and they're summaries of witnesses. In both of those cases, and that was found to be competent evidence to establish probable cause in an extradition hearing. So now, and there's language in those cases that essentially this maybe would not pass muster in a court, in a state court here, in a probable cause hearing, but for extradition purposes it does. So that's what competent evidence is for extradition purposes. So that's how I would respond in brief to the arguments. So you would rely on Zanazanian and Sakaguchi, is that right? Well, it's Emami, 834 Fed 2nd at 1450 and following. Those, as far as I can determine, those are the closest parallels. They really deal with the issue of does there need to be an oath and what constitutes competent evidence. And in fact, I believe it's in Zanazanian that says essentially multiple hearsay, not under oath. As long as it's examined carefully and it's determined to be reliable, it's competent evidence as far as the treaty is concerned. And I don't know if the court has reviewed in detail Judge Adler, that's the magistrate judge who actually did the findings below. His order is very detailed, very careful, very considered. And in fact, if you think about it, he gave, he got rid of two charges. A series of check charges and a series of, I believe both of them were series of check charges. So he didn't take this lightly. He carefully considered what was before him. What would be your bottom line for this court's holding? What do you think? Well, there was competent evidence that the person in front of the court was the person sought by the Greek authorities. That's the issue of identification. There was dual criminality. Help me just a little bit with the dual criminality. It seemed to me that a lot of the discussion of that subject dealt with the question of whether or not one infers intent to defraud from the factual evidence. I would have thought more basic than that, that we'd be looking at what does the Greek law say? Correct. And is that in the record? Well, it is. It's described in the prosecutor's and the magistrate's judge, magistrate judges, there's a three-judge panel from Athens, and that law is described. And it's fraud. It's obtaining money by false pretenses. But that's what we look to in this case. We don't have the criminal code of Greece or something. That's all we have in front of us. But, again, I would step back a bit and say, if you look at the cases, it's very clear the elements, the precise elements don't have to match up. So this argument that specific intent is not somehow not in the record, I think it is, but it doesn't even have to be there, according to the cases. The precise elements don't have to match up. The scope of liability doesn't have to match up. It's enough that the essential evil or the essential character of the conduct is criminal in both jurisdictions. And here you've essentially got a woman who's going up to two people and saying, give me a bunch of money, I'm going to do something with it, and instead pockets it. That's, to put it very bluntly, that's the nature of the conduct described. To go back to the identification issue for a moment, I do want to say a couple things about, one, there's this notion that there was somehow a suggestible identification. Again, it's very important what the posture is here. The cases upon which the Petitioner relies really are cases where the magistrate judge in the first instance says, I don't agree with this identification. There was one case, the Chavez case that the counsel cited, essentially was a murder case where there was a bunch of people driving by in a truck, killed somebody, and eight years later says, okay, that was one of the guys in the truck. It's a very different kind of crime as opposed to a very long series of events where there's direct defrauding. And in any case, it was a magistrate making that determination, not an appellate court after a magistrate has already gone through the record and said, I find there's sufficient evidence of identification. So the posture really makes a difference, I would suggest. I'd also suggest that argument was waived, and there's a real important reason why that argument was waived. The competent evidence argument? No, the suggestibility of ID argument. And here's, if you think about it, counsel referred to, well, these are very serious charges, and you don't want to take lightly sending somebody back to Greece. That's true. But this is a Greek citizen, first of all. And there are very serious charges, which the Greek government rightfully takes seriously. And if you think about it, not raising the issue of timeliness in the district court fits with the pattern and practice of this particular person, if you believe what the charges are, which is defrauding somebody, possibly using a false passport, and then essentially filing petitions in the district court and so on, not raising it until much later, and then we're back at square one. There's no question that the government of Greece could then file again. There's not res judicata. The issue is not decided once and for all. So it just allows, if you believe the charges from Greece, it just allows a continuation of fraudulent conduct, in essence. So I would suggest there are very good policy reasons for enforcing the waiver timeliness issue. Now, I see that my time has just about expired. You don't have to use it all. I would just submit, unless there are further questions from the Court. Any other questions? No. If not, we thank the government. Ms. Kuhn, do you have a rebuttal? First of all, I'd just like to address that last point that this is somehow some sort of tactic to bring up this witness-suggestive identification on appeal. I wasn't trying to go straight to the heart of where you're going to win or lose on, because that's not going to decide the case. Fine. Then I'll turn to competency. You know, the government said at a moment ago Can I ask just one thing, Ms. Kuhn? Sure. Do you agree, do you admit, that your client is a Greek citizen? Yes, I think we've admitted that. Okay. My colleague just said competency requires a careful examination and determination to be sufficiently reliable. I wrote that down in my notes here. And we do need to have that sort of review. And even in Zanazanian, which has been cited extensively, the court on appellate review reviewed the reliability of evidence. In that case, it was co-conspirator statements. In addition, twin case makes clear that we must have competent evidence sufficient under U.S. law to hold someone for trial, and that it must be sufficiently reliable to support a reasonable ground to believe the person is guilty. So here, as to charge two, we don't have multiple levels of hearsay. We don't have anything, any sort of hearsay to evaluate at all. We just have a bald statement of a prosecutor that, based on unspecified investigation, he believes that the person before the court is wanted in Greece. It doesn't even rise to the level of hearsay. It's not – there's no competent evidence at all, as to charge two. And as to charge four, there are timeliness issues under the treaty and suggestibility of the identification, which this Court can review, even on appellate review, because it does have a duty to ensure that this extradition complies with due process. Thank you. Thank you, Ms. Goon. Thanks, both counsels, for their good arguments. This case is submitted. And the next case we will hear is Radillo v. Schreibner. And we'll hear first from Michael Brennan. Thank you.
judges: Farris, Smith, Holland